# AFFIDAVIT
## of
## SEAN McDERMOTT
## SPECIAL AGENT
## FEDERAL BUREAU OF INVESTIGATION

I, Sean McDermott, being first duly sworn, do depose and state that:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and am assigned to the Jefferson City, Missouri office. I have been an SA with the FBI for approximately fifteen (15) years. In the course of my career, I have participated in numerous investigations concerning violations of Title 18, United States Code. I am currently assigned to criminal investigations, and have personally led multiple investigations involving child exploitation. I have gained expertise in the conduct of such investigations through training in seminars and everyday work related to these types of investigations. As an SA, I am authorized to investigate violations of laws of the United States, and to execute warrants issued under the authority of the United States.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. I make this affidavit in support of an application for a search warrant to require WhisperText, LLC (Whisper), a social-networking company headquartered in Los Angeles, California. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A), to require Whisper to disclose to the Government records and other information in its possession, including the contents of communications, pertaining to, all information associated with Whisper username Magnolia_Blue that is stored at premises owned,

maintained, controlled or operated by Whisper.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2422(b), attempted enticement of a minor, 18 U.S.C. § 2251(a), attempted production of child pornography, and 18 U.S.C. § 1470, attempted transfer of obscene materials to a minor, have been committed by JOSÉ CECILIO RAMIREZ-HERRERA. There is also probable cause to search the Whisper account associated with username Magnolia_Blue for evidence of these crimes and items to be seized listed in Attachment A.

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6. On March 14, 2019, Detective Andy Evans with the Boone County Sheriff's Department Cyber Crimes Task Force (BCCCTF) attempted to seek out potential sexual predators by posting an undercover online post on Whisper - a social networking application where users can anonymously post factual or fictional "confessions." The post was titled, "Boys my age are so immature." For this posting, Detective Evans assumed the persona of a 14-year-old female named "Katie" (the Decoy).

7. On March 14, 2019, Detective Evans received a private message on Whisper from username Magnolia_Blue reading, "Do you prefer older guys then?" Magnolia_Blue identified himself as a 30-year-old male named José. Subsequent investigation identified Magnolia_Blue as JOSÉ CECILIO RAMIREZ-HERRERA.

2

8. RAMIREZ-HERRERA communicated with the Decoy on Whisper from March 14, 2019, through April 10, 2019. When the Decoy informed RAMIREZ-HERRERA that she was 14 years old, RAMIREZ-HERRERA replied, "Well I'm okay with it if you are. I feel if it's consentual (sic) then it shouldn't be a huge deal." RAMIREZ-HERRERA sent a photograph of his face to the Decoy.

9. RAMIREZ-HERRERA messaged the Decoy, "I wouldn't mind seeing more of you." The Decoy replied, "Like what kind of pics?" RAMIREZ-HERRERA elaborated, "Well nudes would be nice lol but anything of you really."

10. RAMIREZ-HERRERA messaged the Decoy, "Ever had sex?" The Decoy replied, "No never but thought about it." RAMIREZ-HERRERA messaged, "Would you like to?" The Decoy replied she could not get pregnant. RAMIREZ-HERRERA messaged, "I use protection so don't worry." The Decoy replied, "OK Just be easy with me at first." RAMIREZ-HERRERA messaged, "I'll go slow," and "And I think I'll eat you out first then."

11. RAMIREZ-HERRERA sent the Decoy a photograph of his erect penis. RAMIREZ-HERRERA subsequently messaged the Decoy, "Also you should send me a uncensored pic of your body since you saw my dick."

12. RAMIREZ-HERRERA and the Decoy planned a rendezvous where the Decoy would sneak out of her house after her mom went to work and they would have sexual intercourse in RAMIREZ-HERRERA's car. RAMIREZ-HERRERA messaged the Decoy, "I'll kiss your lips while my hand plays with your other lips," and "I'll kiss your neck. And then make my way down to your pussy and lick your clit while I stick my fingers inside you."

13. On April 10, 2019, RAMIREZ-HERRERA messaged the Decoy a telephone number of (940) 224-6883, which the Decoy began using to communicate with RAMIREZ-

HERRERA via text messages. Detective Evans searched this telephone number on law enforcement data bases known to produce accurate results, and learned it was registered to RAMIREZ-HERRERA with an address in Columbia, Missouri. Detective Evans acquired a Missouri driver's license photograph for RAMIREZ-HERRERA, and observed the person depicted on this photo was consistent with the facial photograph RAMIREZ-HERRERA sent to the Decoy.

14. RAMIREZ-HERRERA arranged to pick up the Decoy at a gas station in Columbia, Missouri, on April 11, 2019, after the Decoy's mom left for work. RAMIREZ-HERRERA texted the Decoy, "how do I know I can trust that this isn't a trap to get me arrested lol."

15. At 8:32 p.m. on April 11, 2019, RAMIREZ-HERRERA texted the Decoy, "Leaving now." At approximately 8:35pm, I observed a vehicle registered to RAMIREZ-HERRERA's residential address depart the common parking lot at his residence and drive to the vicinity of the arranged rendezvous point. Shortly thereafter, Boone County Sheriff's Department deputies arrested RAMIREZ-HERRERA at the gas station he was directed to by the Decoy. RAMIREZ-HERRERA had multiple condoms in his pants pocket at the time of his arrest.

16. RAMIREZ-HERRERA was transported to the Boone County Sheriff's Department whereupon he waived his *Miranda* rights and agreed to be interviewed by Detective Evans. RAMIREZ-HERRERA subsequently admitted he intended to meet a 14-year-old girl named Katie, who he had met on Whisper and had been texting the past month, the evening he was arrested. RAMIREZ-HERRERA admitted he intended to have sex with Katie if he met her. RAMIREZ-HERRERA admitted sending an image of his penis to Katie, and asking Katie to send him nude images on at least two occasions.

4

17. RAMIREZ-HERRERA admitted to Detective Evans that he used the Pixel 3 cellular telephone located in the center console of his vehicle at the time of his arrest to communicate with Katie. RAMIREZ-HERRERA signed a consent form authorizing law enforcement to search this device, and voluntarily provided the passcode to access it. A preview of this device by a BCCCTF officer located Whisper messages and text messages between RAMIREZ-HERRERA and the Decoy.

18. RAMIREZ-HERRERA has been in custody at the Boone County Jail since his arrest on April 11, 2019.

19. From my review of publicly available information provided by Whisper about its service, including Whisper's "Privacy Policy," I am aware of the following about Whisper and about the information collected and retained by Whisper.

20. Whisper is a privately held social networking company that develops mobile applications and provides an online platform for users to communicate and interact with one another. Whisper develops and manages applications that allow users to share secrets and meet new people, share real thoughts and feelings, forge relationships, and engage in conversations on various topics through a mobile app. Whisper allows users to communicate without disclosing their identities by posting content for public viewing and sending private messages. WhisperText, Inc. was incorporated in 2011 and is based in Venice, California.

21. When using Whisper's mobile application, a username will be randomly assigned to the user that may be changed or deleted at any time. The username is publicly displayed when interacting with the Services, such as when a whisper is posted or a chat message is sent to another user. Whisper may also ask the user for, or the user may choose to provide, additional information, such as age or gender, that will be associated with the user's Whisper account.

22. When the user interacts with the Services, Whisper collects the information and content created. For example, Whisper collects the text and/or image content of the user's whispers, replies and chat messages. All whispers and replies are public and are publicly displayed. They may be viewed, shared and modified by Whisper users, Whisper and others for commercial or personal purposes. If the user includes information that could identify the user in the text or image of a whisper, people who see it may determine the user's identity. MediaLab does not post chat messages publicly but, as with any message that sent via any service, the recipient might do so.

23. The user may provide other information directly to Whisper. For example, Whisper may collect information when the user fills out a form, updates the user's account, interacts with the Services, applies for a job at Whisper, communicates with Whisper via third-party social media sites, requests customer support or otherwise communicates with Whisper.

24. Many features of the Services will not work unless the user provides Whisper with some information about the user's location. If the user consents to the collection of location information (e.g., if the user permits their mobile device to send Whisper the user's latitude and longitude), Whisper will collect and use this information both while the user is directly using the Services and in the "background" (i.e., at times when the user is not directly using the Services), so that Whisper can tailor the user's interactions and experiences with the Services and to provide more relevant advertising to the user on Whisper's Services and other websites and mobile applications. For example, Whisper or its advertising partners may show the user whispers from people around the user or places the user frequently visits, notifications of things happening around the user in real time, or advertisements from businesses near the user's location. If the user does not permit their mobile device to provide Whisper with location information, or location

6

information is not available from the user's device for technical reasons, Whisper may use the user's IP address or information about the WiFi SSID from which the user accesses the Services to determine an approximate geographic location for the user's device.

25. Whisper collects information about the user's use of the Services, including access times, pages and whispers viewed, user and whisper interactions (e.g., hearts, flags and replies) and other information about the user's interactions with Whisper, the Services and other users. Whisper uses this information to, among other things, personalize the user's experience, provide and improve the Services, and monitor and analyze use of the Services.

26. Whisper collects information about the device used by the user to access their Services, which may include the hardware model, operating system and version, browser type and language, IP address, unique device identifiers and mobile network information. Among other things, Whisper uses this information to customize the Service for the user's device, to provide customer service and support, to deliver the products and services the user requests, to deliver notifications, for user safety, and for analytics and authentication.

27. Like most websites and applications, Whisper and their service providers use cookies, web beacons and other technologies to collect information. Cookies are small data files stored on the user's hard drive or in device memory that help Whisper and their service providers to, among other things, improve their Services and the user's experience by seeing which areas and features of their Services are popular.

28. Whisper collects information in their log files when the user uses the Services. This includes, among other things, the user's browser and device type, language, access times, pages viewed, IP address, and the URL visited by the user before navigating to Whisper's websites. Whisper uses log information to provide, understand and improve their Services.

7

29. When the user uses the Services, certain information may be shared with other users and the public. For example:

- Any whisper posted to the Services is public and, as a result, others may be able to see the user's username at the time the whisper was posted, the text and image contents of the user's whisper, and the geographic location in which the user posted their whisper.

- When using Whisper's chat messaging function to directly contact another user, the recipient of the user's chat message will see the user's username and the contents of the message. The recipient may also choose to disclose the user's chat messages to others.

- If the user posts any User Content to the Services, other Whisper users may be able to see certain information related to the user's location. For example, other users may be able to see whether the user is or was within a certain proximity of their current location or if the user frequents similar locations.

- If the user invites others to try Whisper via SMS, email or otherwise, those individuals may see the user's name, phone number, email address or other contact information.

30. Whisper may also share information as follows or as otherwise described in this Privacy Policy:

- With vendors, consultants and other service providers who need access to such information to carry out work on Whisper's behalf;

- If Whisper believes the user's actions are inconsistent with the user agreements or policies, or to protect the rights, property and safety of Whisper or others;

- In connection with, or during negotiations of, any merger, sale of company assets, financing or acquisition of all or a portion of our business by another company;

- Between and among Whisper, and its current and future parents, affiliates, subsidiaries and other companies under common control and ownership;

- If Whisper has a good faith belief that disclosing the information is necessary to comply with a law, regulation, legal process or governmental request; and

- With the user's consent or at the user's direction.

Whisper may also share aggregated or de-identified information, which cannot reasonably be used to identify the user.

33. The Services may offer social sharing features and other integrated tools, which let the user share whispers with other media. The uer's use of such features enables the sharing of

8

information with the user's friends or the public, depending on the settings established by the user with the entity that provides the social sharing feature.

34. To perform analytics and deliver relevant content and advertising, Whisper may allow others to collect information about how the user uses Whisper's Services. For example, these entities may use cookies, device identifiers and similar technologies to collect information about the user's computer or device, the content that interests the user, the places the user visits, and the time the user spends using different parts of Whisper's Services.

35. The user's whispers remain public so long as the user or Whisper do not delete them from the Services. The user may choose to delete their individual whispers at any time, and Whisper will then remove them from the Services. However, it is important to note that deleted whispers may remain in storage in Whisper's systems for a limited period of time for legal, business, safety or system backup reasons, and they may remain accessible in cached and archived pages of the Services or elsewhere if others have chosen to copy or save them. Search engines and other sites may also index and cache content on Whisper's Services. The user may have to contact these third-party sites or search engines directly to delete their cached information, subject to their policies and procedures.

36. If the user wishes to delete their account, they must contact Whisper by using the "Email Support" link in settings from inside the application, but Whisper may retain certain information as required by law, for legitimate business purposes or for the safety of Whisper (including its users) and others. Whisper may also retain cached or archived copies of information about the user for a certain period of time.

37. When the user first downloads or opens any of Whisper's mobile applications or access certain features of the Services, the user will be asked to consent to the collection of location information from the user's mobile device or platform. If the user consents to the collection of

this information but later wishes to withdraw their consent, the user may do so at any time by either changing the settings on their mobile device or deleting Whisper's mobile application.

38. Based on the information above, the computers of Whisper m are likely to contain all the material described above with respect to Whisper username Magnolia_Blue, including stored electronic communications and information concerning subscribers and their use of Whisper, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

### **Information to be Searched and Things to be Seized**

39. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A) and (c)(1)(A), by using the warrant to require Whisper to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment A. Upon receipt of the information described in Section I of Attachment A, Government-authorized persons will review that information to locate the items described in Section II of Attachment A.

### **Conclusion**

40. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits and instrumentalities of violations, or attempted violations, of 18 U.S.C. §§ 2422(b), 2251(a) and 1470, may be located in the Whisper account described in Attachment A.

41. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on

10

Case 2:19-sw-03048-WJE   Document 1-1   Filed 04/23/19   Page 10 of 11

Whisper, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

42. The facts set forth in this affidavit are true and correct to the best of my knowledge and belief.

Further, Affiant sayeth not.

**Sean McDermott**
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me on this, the 23rd day of April, 2019.

**Willie J. Epps, Jr.**
United States Magistrate Judge

11